UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT EWERS,

                Plaintiff,                    No. 17-14137

v.

                                        Magistrate Judge R. Steven Whalen

RAINMAKER RECOVERY 3, INC.,
d/b/a RAINMAKER COLLECTIONS,

                Defendant.
_____ /

**OPINION AND ORDER DENYING CROSS-MOTIONS
FOR SUMMARY JUDGMENT AND GRANTING LEAVE
FOR PLAINTIFF TO FILE AN AMENDED COMPLAINT**

On December 21, 2017, Plaintiff Scott Ewers filed a complaint in this Court

asserting that Defendant Rainmaker Recovery 3 Inc. ("Rainmaker") violated the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Before the Court are

Rainmaker's Motion for Summary Judgment [Doc. #23] and Plaintiff's Motion for Partial

Summary Judgment [Doc. #28]. For the reasons discussed below, both motions will be

DENIED. In addition, the Court will grant Plaintiff leave to amend his complaint to

specifically add a claim under 15 U.S.C. § 1692g(b).

## I.    FACTS

On or about August 14, 2017, Rainmaker sent Plaintiff a letter attempting to

collect a debt allegedly owed to South Oakland Gastroenteroloty. *Complaint* [Doc. #1],

¶¶ 6-7. On or about September 5, 2017, Plaintiff received a telephone call from

Rainmaker attempting to collect the debt. *Id*. ¶ 8.

On September 13, 2017, Plaintiff sent Rainmaker a letter–which Rainmaker

received on September 18, 2017–requesting validation of the debt and requesting that Rainmaker flag the debt as disputed. *Id*. ¶ 9. On December 2, 2017, Plaintiff obtained his Equifax credit report and noted that Rainmaker had reported the alleged debt without indicating that it was disputed. *Id*. ¶ 11. During the month of January, 2018, Rainmaker provided Plaintiff with validation of the debt.

At the time of the events in question, Rainmaker was a relatively small collection agency with three employees and a non-employee owner. *Defendant's Motion* [Doc. #23], Exhibit 1, Affidavit of Victoria Targosz. Fred Geisler was a collector and the assistant collections manager. *Id*. Mr. Geisler testified that Rainmaker uses an account management software system know as "Debt$Net," which is used to track collection accounts and generate automated tasks based on data entry and status of accounts. *Defendant's Exhibit 2*, Geisler Deposition Transcript, at 11.

Mr. Geisler testified that he received Plaintiff's validation request and dispute letter on September 18, 2017. *Id*. at 21, 69. Defendant's Exhibit 4 is a screen shot of the Debt$Net Change Audit Log, purporting to show that on that date, Plaintiff's account was changed to note that he had an attorney, and that the debt was disputed. However, Mr. Geisler testified that there was a "possibility" that he failed to check a box that would have prevented the account from being reported to Equifax as "disputed." *Geisler Deposition*, 32-33. Mr. Geisler testified that when he audited his pending files on December 30, 2017, he first noticed that Plaintiff's file was reported "incorrectly," and saw that the "dispute" box had not been checked. *Id*. at 38. He saw that the account had been reported to Equifax on November 30, 2017 without being flagged as disputed, stating, "I don't know if it was an error on my end that the box was not checked as disputed." *Id*. In any event, Mr. Geisler corrected the error, changed the status of the

account to "disputed and cancelled," and deleted the debt from Plaintiff's credit report with Equifax. *Id*. at 36.

Rainmaker delivered the debt verification documents to Plaintiff's attorney on January 30, 2018.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III. DISCUSSION

### A. § 1692e(8)

It is undisputed that Rainmaker erroneously failed to report Plaintiff's account to Equifax as disputed. This is the basis of Plaintiff's claim under § 1692e(8).[1] The salient question in these cross-motions for summary judgment centers on the bona fide error defense to an FDCPA claim, specifically whether there is a triable question of fact as to the viability of that defense. That defense, set forth at 15 U.S.C. § 1692k(c), provides that

> "[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

The bona fide error defense is an affirmative defense, and the debt collector bears the burden of proof. *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1034 (6th Cir. 1992). The bona fide error defense requires the debt collector to prove by preponderance of the evidence that (1) the violation was unintentional; (2) the violation was a result of a bona

---

[1] "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, *including the failure to communicate that a disputed debt is disputed*." (Emphasis added).

fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 614 (6th Cir. 2009).

It is the third prong–whether Rainmaker maintained procedures reasonably adapted to avoid the error–that is at issue in this case. This is an objective and fact-intensive inquiry that is generally left to the fact-finder. *Narwick v. Wexler*, 901 F.Supp. 1275, 1282 (N.D. Ill. 1995). *See also Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492, 504 (D.Md.2004)("The inquiry into whether a debt collector's procedures are reasonable is, by its nature, fact-intensive, and should therefore typically be left to the jury.")(quoting *Gill v. Kostroff*, 82 F.Supp.2d 1354, 1360 (M.D.Fla.2000)).

Rainmaker itself is unsure how the error occurred. Mr. Geisler speculates that it was either a computer or software malfunction, or human error, i.e., he may have inadvertently neglected to check the "dispute" box. Rainmaker does have a procedure for tracking the status of accounts that apparently depends on the Debt$Net software. But while Mr. Geisler declares that Rainmaker had seen no similar problems in the past, we do not at this point have enough information about any more general industry-wide problems with Debt$Net, whether and when the software had been updated, quality control checks, or training protocols. Nor is Mr. Geisler's somewhat self-serving speculation that his possible failure to check the "dispute" box may have been inadvertent sufficient to remove the bona fide error defense from the trier of fact. We simply do not know how this occurred, or to what extent Rainmaker's procedures were reasonably designed to prevent errors. Indeed, in its amended response to Plaintiff's motion for summary judgment [Doc. #30, Pg. ID 272], Rainmaker acknowledges that "[a] fact question exists as to whether the upload to Equifax resulted from a software glitch or

bona fide error." As the Court stated in *Gingiloski v. Commercial Recovery Servs.*, 2017 WL 2334946, at *5 (E.D. Mich. 2017), "Defendant's cursory assertion and the limited evidentiary record are insufficient to affirm the bona fide error defense."

Of course, a jury might well accept Rainmaker's bona fide error defense. Because questions of material fact remain for resolution by the fact-finder, the Plaintiff's motion for summary judgment must also be denied.

## B.    § 1692g(b)

Plaintiff's complaint does not cite or explicitly refer to 15 U.S.C. § 1692g(b).[2] Plaintiff states that he "inadvertently failed to refer to that section of the FDCPA in Count I of the complaint." He cites *Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004), for the proposition that "legal theories of recovery need not be spelled out as long as the relevant issues are sufficiently implicated in the pleadings."

The complaint focusses on the fact that Rainmaker erroneously reported the debt to Equifax as undisputed, and alleges, at ¶ 12, "To date, Defendant has not responded to Mr. Ewer's request for validation." The Plaintiff now agrees that this last allegation is incorrect, and that Rainmaker in fact validated the debt in January, 2018. In any event, the complaint does contain the following facts that would, at least in part, support a claim under § 1692g(b): Plaintiff sent a dispute letter in September, 2017, and on December 2,

---

[2] "**(b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment*, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." (Emphasis added).

2017, he discovered that the debt was reported as undisputed. However, the question of whether Rainmaker took an action to collect the debt before verification was provided–an essential element of the claim–is addressed only by Plaintiff's incorrect assertion that Rainmaker *never* sent the validation before the complaint was filed.  Notwithstanding *City of Salem*, a complaint must still be sufficiently clear as to give a defendant fair notice of the claim.  In *City of Salem*, the Court noted that "[b]ecause Smith's sex discrimination claim so thoroughly and obviously sounds in a constitutional claim of equal protection, Defendants had fair notice of his claim and the ground upon which it rests."  *Id*., 378 F.3d at 577.  Here, a § 1692g(b) claim is not obvious from this complaint.

Anticipating that the Court might not find § 1692g(b) adequately pled, Plaintiff asks in the alternative that he be permitted to amend his complaint to add that claim.  *See Plaintiff's Response to Defendant's Motion* [Doc. #26, Pg. ID 149-50].

Despite the general rule of liberality with which leave to file amended complaints is to be granted, *see* Fed.R.Civ.P. 15(a) , the Sixth Circuit has held that when a proposed amended complaint would not survive a motion to dismiss, the court may properly deny the amendment.  *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980); *Thiokol Corporation v. Department of Treasury*, 987 F.2d 376 (6th Cir. 1993). Rainmaker argues that amendment would be futile because (1) it is protected by the bona fide error defense, and (2) the November 30, 2017 reporting of the debt to Equifax was not an action to collect a debt.

As discussed in the previous section, there are questions of fact regarding the bona fide error defense that preclude dismissal or summary judgment at this stage of the litigation.  The viability of the claim therefore hinges on whether reporting a debt to a credit reporting agency such as Equifax constitutes a debt collection activity.

Congress established the FDCPA "to eliminate abusive debt collection practices by debt collectors, to [ensure] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA is a remedial statute that should be construed liberally in favor of the consumer. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *Plummer v. Gordon*, 193 F. Supp. 2d 460, 462 (D. Conn. 2002); *see also Hamilton v. United Healthcare of Louisiana, Inc*., 310 F.3d 385, 392 (5th Cir. 2002) (stating Congress intended the FDCPA to have a broad remedial scope); *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006) (stating that "[b]ecause the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose").

The following chronology is undisputed. On September 18, 2017, Rainmaker received Plaintiff's letter disputing the charge and requesting verification of the debt. Rainmaker reported the debt to Equifax on November 20, 2017.  Rainmaker did not verify the debt until January of 2018. Plaintiff contends that Defendant's act of reporting - albeit automated reporting - to Equifax after Plaintiff sent a dispute letter but before the debt was verified violated 15 U.S.C. § 1692g(b).

The Sixth Circuit has held that the language of Section 1692g(b) dictates that each "failure to cease" collection activity without having validated the debt presents a discrete claim for violation of the FDCPA.  *Purnell v. Arrow Financial Services*, 303 Fed.App'x 297, 304 (6th Cir. 2008). The Sixth Circuit "assumed without deciding" that the reporting of the debt to a credit-reporting agency after a validation has been requested constitutes a "collection activity." In doing so, the Court referenced a Federal Trade Commission letter opining that a debt collector reporting a disputed debt during the validation period is a

"collection activity." *Id*. at 304 n.5 (citing Letter from John F. LeFevre, Attorney, Federal Trade Commission, Office of the Secretary, to Robert G. Cass, Compliance Counsel, Commercial Financial Services (December 23, 1997), 1997 WL 33791232, at *1).[3]

In *Edeh v. Midland Credit Management, Inc*., 748 F. Supp. 2d 1030 (D. Minn. 2010), the Court affirmatively held what *Purnell* assumed: that reporting a consumer's debt to a credit-reporting agency after the consumer requests a verification constitutes a "collection activity" proscribed by §1692g(b).  *Id*. at 1035-36.  Citing *Purnell*, the *Edeh* Court found the FTC letter persuasive:

> "While recognizing that the FDCPA is 'unclear' on the question, the FTC 'view[s] reporting to a consumer reporting agency as a collection activity prohibited by § 1692g(b) after a written dispute is received and no verification has been provided.' Letter from John F. LeFevre, Attorney, Federal Trade Commission, Office of the Secretary, to Robert G. Cass, Compliance Counsel, Commercial Financial Services (December 23, 1997), 1997 WL 33791232, at *1. The FTC explains, 'the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls.' *Id*." *Id*. at 1035.

*Edeh* recognized that the FTC's informal letter is not entitled to *Chevron* deference,[4] "but it is nevertheless 'entitled to respect' to the extent that it has the 'power to persuade.'" *Id*., citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)(in turn quoting *Skidmore v. Swift & Co*., 323 U.S. 134, 140(1944)).  The Court also noted that it "has learned, through its work on countless FDCPA cases that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver." *Id*.

---

[3] In *Purnell*, the defendant undertook other collection activity as well, including numerous letters and telephone calls to the plaintiff.

[4] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1987)(creating a two-step analysis for evaluating an administrative agency's statutory interpretation).

*Edeh* also cited with approval two district court cases holding that reporting a debt constitutes collection activity. *See Semper v. JBC Legal Group*, 2005 WL 2172377, at *4 (W.D. Wash. Sept. 6, 2005)(when a verification request has been sent "all further attempts to collect on [a] debt, including any . . . subsequent reports to the credit-reporting agencies, violate [Section] 1692g(b)"); *Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1278 (S.D. Ala. 2010)("reporting a disputed, unverified debt to a CRA without designating the debt as disputed violates § 1692g(b)").

I recognize that there are cases to the contrary. *See Breed v. Nationwide Insurance Company*, 2007 WL 1408212, at *1 (W.D. Ky. May 8, 2007); *Jackson v. Genesys Credit Management*, 2007 WL 2113626, at *3 (S.D. Fla. July 23, 2007). However, as *Edeh* noted, neither *Breed* nor *Jackson* provided much analysis. Moreover, the concern expressed in the FTC letter that "debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls," and the *Edeh* Court's observation that reporting debts is a "quiver in the arrow" of debt collectors, is well-founded. A credit rating is extremely important to consumers, and can affect the ability to obtain credit, the rate of interest on loans, and even insurance rates. The reporting mechanism can thus pressure the consumer to pay the debt, perhaps to an even greater extent that a letter or a telephone call, and it serves the same purpose. In practical terms, and in view of the liberal construction owed to remedial statutes such as the FDCPA, it is an attempt to collect a debt.

I therefore find that when Rainmaker reported Plaintiff's debt to Equifax before verifying the debt, it violated § 1692g(b), and permitting Plaintiff to amend his complaint would not be futile. The only remaining question is whether Rainmaker is entitled to the

bona fide error defense.[5]

## IV.   CONCLUSION

Rainmaker's Motion for Summary Judgment [Doc. #23] and Plaintiff's Motion for Partial Summary Judgment [Doc. #28] are DENIED.

Plaintiff's request to amend his complaint to articulate a claim under 15 U.S.C. § 1692g(b) is GRANTED.  Plaintiff will file his amended complaint no later than 14 days from the date of this Opinion and Order.

IT IS SO ORDERED.


Dated: July 30, 2019                                s/R. Steven Whalen
                                                    R. STEVEN WHALEN
                                                    UNITED STATES MAGISTRATE JUDGE


---

## CERTIFICATE OF SERVICE

I hereby certify on July 30, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 30, 2019.

                                                    s/Carolyn M. Ciesla
                                                    Case Manager for the
                                                    Honorable R. Steven Whalen

---

[5] Because Rainmaker's defense to Plaintiff's claim under § 1692e(8) is also based on bona fide error, it appears that allowing Plaintiff to amend to add the § 1692g(b) claim would not require any additional discovery.